**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

————————————————————

JAMES M.,

                  Plaintiff,    1:20-cv-08745-NLH

v.                      **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]

————————————————————

**APPEARANCES:**

JENNIFER LILLEY STONAGE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL
724 KENILWORTH AVE, SUITE 2
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

PATRICK EUGENE ROACH
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of the Commissioner*


**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner
of the Social Security Administration.

Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, December 1, 2015.  For the reasons stated below, this Court will reverse and remand that decision.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On January 7, 2016, Plaintiff filed an application for DIB, alleging that he became disabled on December 1, 2015.  (ECF 14 at 2).  Plaintiff claims that he cannot work because of his impairments of depression, anxiety, high blood pressure, high cholesterol, chronic obstructive pulmonary disease ("COPD"), sleep apnea, carpal tunnel syndrome, leukocytosis, borderline intellectual functioning, bilateral lower extremity edema and migraine headaches.[3]  (R. at 72-73; ECF 13 at 1).

Plaintiff's claim was denied initially and upon reconsideration.  (ECF 14 at 2-3).  Plaintiff requested a

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] On the alleged onset date, Plaintiff was 41 years old, which is defined as a "younger person" (age 49 and under).  20 C.F.R. § 404.1563.

hearing before an ALJ, which was held on November 7, 2018. (Id.)  On January 31, 2019, the ALJ issued an unfavorable decision.  (Id.).  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on May 13, 2020, making the ALJ's decision final.  (R. at 1).  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen,

3

845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

                Unless the [Commissioner] has analyzed all

4

> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although

an ALJ, as the factfinder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).

In terms of judicial review, a district court is not

"empowered to weigh the evidence or substitute its conclusions

for those of the fact-finder."  Williams, 970 F.2d at 1182.

However, apart from the substantial evidence inquiry, a

reviewing court is entitled to satisfy itself that the

Commissioner arrived at his decision by application of the

proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v.

Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris,

508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in

the past ("past relevant work") despite the severe
impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
ability to perform work ("residual functional
capacity"), age, education, and past work experience
to determine whether or not she is capable of
performing other work which exists in the national
economy.  If she is incapable, she will be found
"disabled."  If she is capable, she will be found "not
disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d

1150, 1153 (3d Cir. 1983).  In the first four steps of the

analysis, the burden is on the claimant to prove every element

of her claim by a preponderance of the evidence.  See id.  In

the final step, the Commissioner bears the burden of proving

that work is available for the Plaintiff: "Once a claimant has

proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other

kind of substantial gainful employment he is able to perform."

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.

Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged

in substantial gainful activity since December 1, 2015,

7

Plaintiff's alleged onset date.  (R. at 12).  At step two, the ALJ found that Plaintiff's impairments of major depressive disorder, anxiety disorder, COPD, and obesity were severe. (Id.)  In addition, the ALJ stated that he found Plaintiff's impairments of hypertension and diabetes mellitus to be non-severe.  (Id.)  The ALJ also stated that Plaintiff's alleged impairments of carpal tunnel syndrome, back pain and migraine headaches were not medically determinable impairments.  (Id. at 13).  At step three, the ALJ determined that Plaintiff's impairments individually or in combination with one another did not equal the severity of one of the listed impairments.  (Id. at 13-15).

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the medium level,[4] with certain limitations.  (Id. at 15).  At steps four and five, the ALJ determined that Plaintiff could perform his past relevant work as a hospital cleaner.  (Id. at 21).

Plaintiff cites to four assignments of error in his brief: (1) whether the ALJ erred by finding that Plaintiff's carpal tunnel syndrome, back pain, and headaches were not medically determinable impairments and by not incorporating them into the

---

[4] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

RFC; (2) whether the ALJ erred by failing to consider symptoms of Plaintiff's severe impairments in formulating Plaintiff's RFC; (3) whether the ALJ failed at step two to evaluate the evidence of Plaintiff's borderline intellectual functioning, obstructive sleep apnea, bilateral lower extremity edema and subsequent diagnosis of leukocytosis, and further failing to incorporate associated limitations into Plaintiff's RFC; and (4) whether the ALJ erred in formulating the RFC by posing a faulty hypothetical to the vocational expert (the "VE"). (See ECF 13 at 1).

This Court will reverse and remand this matter because it finds that the ALJ's step two analysis was so limited as to preclude a meaningful review. The Court's determination rests principally on Plaintiff's first and third assignments of error, namely, issues with the ALJ's findings on medically determinable impairments.

As a baseline matter, the Third Circuit has stated that "[t]he burden placed on an applicant at step two is not an exacting one." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). A Plaintiff merely must pass a de minimis screening test. Id. While a determination that a medically determinable impairment is not severe at step two may be harmless error if said impairment is incorporated in the RFC, this exception does not apply where the ALJ errs in determining

whether a claimed condition is a medically determinable impairment.  Penny Lou S., Plaintiff, v. Comm'r of Soc. Sec., Defendant., 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) ("[T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable.").  Thus, a court is not free to presume that an error in assigning medically determinable impairments is harmless error.  Santiago v. Saul, 2020 WL 5511651, at *3 (D. Conn. Sept. 14, 2020).

The regulations state that for a condition to be considered a medically determinable impairment, "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b); see Mays v. Barnhart, 78 F. App'x 808, 812 (3d Cir. 2003) (discussing the standard).  This medical evidence must be "objective" and come from an "acceptable medical source."  SSR 16-3p ("We call the medical evidence that provides signs or laboratory findings objective medical evidence. We must have objective medical evidence from an acceptable medical source.").

Here, remand is warranted because the ALJ did not explain

why he determined that Plaintiff's headaches were not medically determinable impairments.  For Plaintiff's allegations of carpal tunnel syndrome, back pain, and headaches, the ALJ simply stated in boilerplate fashion, "There is no objective or clinical evidence to support the existence of those alleged impairments." (R. at 13).  The Court's own review of the record leads it to agree with the ALJ with respect to carpal tunnel syndrome and back aches because the Court's own searching review of the record shows no diagnoses by an acceptable medical source of those conditions.

However, with respect to headaches, there are multiple instances in the record where a medical doctor has noted a diagnosis of headaches.  (See id. at 687, 689, 787).  To be sure, at least one of Plaintiff's doctors requested that Plaintiff follow up with an MRI, (id. at 787), and it does not appear that Plaintiff did so.  There well may have been substantial evidence on the record to support a finding that Plaintiff's headaches were not medically determinable impairments, but the ALJ had a duty to explain his reasoning for rejecting the diagnoses.  Burnett, 220 F.3d at 122.  Without the ALJ's reasoning on the record, this Court cannot conduct a meaningful review.  Gober, 574 F.2d at 776; Ann S v. Kijakazi, 2022 WL 204596, at *5 (D. Utah Jan. 24, 2022) ("[T]he court cannot say that the ALJ's error at step two—concluding without

explanation that Plaintiff's fibromyalgia was not a medically determinable impairment—did not affect the ALJ's subsequent analysis.").

In a similar vein, the Court finds it necessary to remand this matter for determinations regarding Plaintiff's alleged impairments of borderline intellectual functioning, edema in the bilateral lower extremities, sleep apnea, and leukocytosis. Plaintiff argues that the ALJ failed to consider these conditions at step two of the analysis, (ECF 13 at 1), and the Court agrees.  The ALJ did not make a finding on whether they were medically determinable impairments and, if so, whether or not they were severe.  This Court's review of the record reveals that a New Jersey licensed psychologist documented a finding that Plaintiff was "functioning within the borderline range of intellectual abilities."[5] (R. at 293).  One of Plaintiff's doctors also noted a diagnosis of edema in Plaintiff's bilateral lower extremities.  (Id. at 686, 786).  There is also evidence that Plaintiff sought treatment for sleep apnea.  (Id. at 701).  Above all though, the record is replete with instances documenting a diagnosis of leukocytosis.  (Id. at 714, 719, 722,

---

[5] The ALJ mentioned the psychologist's opinion in the RFC but the discussion there deals with the weight the ALJ assigned to that opinion in the RFC and not whether the conditions discussed by the psychologist, such as borderline intellectual functioning, were medically determinable impairments. (R. at 19).

738-39).

The ALJ has a duty to consider all medically determinable impairments that a claimant is able to establish prior to his last date insured.  See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) ("The claimant must also establish that the onset date of disability occurred prior to the expiration of the claimant's insured status.").  Here, the ALJ failed to even mention several conditions that were present in Plaintiff's medical records.  Remand is appropriate here for the ALJ to first to determine if these are medically determinable impairments and if so whether or not they are severe.  John B. v. Kijakazi, 2022 WL 813829, at *6 (N.D.N.Y. Mar. 16, 2022) ("The evidence cited above is inconsistent with the ALJ's finding that plaintiff's CKD did not rise to the level of a medically determinable impairment. The ALJ failed to include any explanation for why he did not include CKD at step two, despite the evidence of record. Accordingly, remand is warranted because the ALJ's error impacted the subsequent steps of the disability determination process.").

Given the ALJ's failure to address certain impairments and explain his findings on medical determinable impairments at step two, the Court is unable to evaluate Plaintiff's other

assignments of error regarding the RFC analysis.[6] Ruth B. v. Kijakazi, 2021 WL 8527625, at *5 (W.D. Va. Oct. 29, 2021) ("Because I find that remand is warranted on the grounds that the ALJ did not adequately explain her determination that Ruth's cognitive impairment was not a medically determinable impairment . . . . Ruth's additional allegations of error will not be addressed."). Thus, the Court holds that remand is warranted here.

**III. Conclusion**

For the reasons expressed above, the decision of the ALJ was not supported by substantial evidence and the Court will reverse and remand this matter for further proceedings consistent with this Opinion. The Court expresses no opinion as to whether the Plaintiff will ultimately be determined to be disabled under the regulations.

An accompanying Order will be issued.


Date: August 6, 2022                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

_____

[6] The Court briefly notes a discrepancy between the ALJ's finding on the percentage of time that Plaintiff would be off-task and the testimony of the VE. The ALJ concluded that Plaintiff would be off-task 12% of the time in an eight-hour workday. (R. at 15). However, the VE testified that being off task for more than 40 minutes in an eight-hour workday would preclude work. (Id. at 69). This comes out to about 8.33% off-task per eight-hour workday, a figure lower than 12%. While this discrepancy is puzzling to the Court, it does not base its remand on this observation given the errors outlined above.